48 CCPA

**Application of Viktor GIRTANNER.**
**Patent Appeal No. 6711.**
United States Court of Customs
and Patent Appeals.
July 21, 1961.

Michael S. Striker, New York City, for appellant.

Clarence W. Moore, Washington, D. C. (Joseph F. Nakamura, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

RICH, Judge.

■ This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 13–16 and 19 of appellant's application, Serial No. 460,420, filed October 5, 1954, for a patent on a process of making a highly lustrous plastic sheet material. Samples submitted show the surface to resemble that of "patent" leather. The rejection was initially based on a number of patents, but was sustained by the board only so far as it was based on

Saidel 2,536,773 January 2, 1951.

Accordingly, only that patent will be considered here.

■ Claims 13 and 19, which are representative of the appealed claims, are as follows:

"13. In a process of producing a two-ply sheet material of a thermoplastic synthetic resin, said sheet material being readily separable into two sheets, each of said two sheets having a surface of high luster, the steps comprising placing upon each other two sheets of a thermoplastic synthetic resin of substantially the same composition, each of said sheets having a surface of high luster, and at least one of said surfaces of high luster being provided immediately before such placing operation in face to face contact of said highly lustrous surfaces and exposing said superposed two sheets without application of heat to a pressure sufficient to unite said two sheets to a readily separable two-ply sheet, but insufficient to substantially reduce the high luster of said surfaces upon separation of said sheets from each other.

"19. In a process of producing stable sheets and foils of thermoplastic polymerization products, having a surface of high luster, the steps comprising hot-calendering a sheet of said thermoplastic polymerization product, passing the sheet through a pair of rollers imparting thereto a highly lustrous surface, said pair of rollers consisting of a high-polish roller and a pressure roller forcing the sheet against the high-polish roller, and conducting the resulting sheet having a high luster surface over cooling rollers, and, together with another sheet of substantially the same thermoplastic polymerization product, said sheet having a high luster surface and prepared in the same manner, in face to face contact of their high luster surfaces through a pair of cold pressure rollers, at a pressure sufficient to unite said two sheets to a readily separable two-ply sheet, but insufficient to substantially reduce the high luster of said surfaces upon separation of said sheets from each other."

Appellant's application relates to the process of producing thermoplastic synthetic resin sheet material having a high degree of luster on one side and preserving the luster until the material is used. The luster is produced in a conventional manner by calendering and the invention

---

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

is in the process of preserving it. This process comprises placing the high-luster sides of two sheets in face to face contact immediately after the luster has been imparted to at least one of them and pressing them together without heat so that they adhere but can easily be separated when desired by peeling one sheet off the other. The surfaces are thus kept free from dust and from contact with rough surfaces, including either the back of the material itself or an intermediate layer of tissue paper when in a roll, until the sheets are to be used.

The application states that if the high-luster surface is wound upon or otherwise brought into contact with a rough surface its luster is dimmed after even a short period of time, such as ten minutes. To avoid this, appellant brings the polished surfaces together immediately after one or both have received their high luster.

The Saidel patent relates to the production of containers made from sheets of synthetic resin similar to the material employed by appellant. These sheets are described as "preferably" being "pressure polished on both sides so as to have perfectly smooth plane surfaces." In the illustrative example, which is a tobacco pouch, approximately one third of an elongated sheet is turned back and permanently heat-sealed at two of its edges to the underlying portion of the sheet to form a pouch, leaving a flap which is adapted to be folded over the mouth of the pouch and to overlie or wrap around the pouch. When the pouch has been filled with tobacco the opposed surfaces at the opening or mouth of the pouch are manually pressed together, whereupon the adjacent polished surfaces form a seal which may be broken, when desired, by merely pulling the surfaces apart. The pouch may then be resealed and reopened in the same manner as often as desired. To make this possible Saidel uses sufficient plasticizer in the sheet material to give it adhesiveness to itself under light pressure. By merely folding the flap over the previously sealed mouth, wrapping it around the pouch, and then pressing it against the pouch, the flap is held

in place and an additional seal is provided.

In holding the appealed claims unpatentable over Saidel the board pointed out that the reference discloses the formation of sheets which are highly polished by pressure and of high luster, and that such sheets are sealed together by manual pressure in closing the pouch, after which they may be separated and resealed. The board also found that there is no reason to suppose that the manual pressure and subsequent separation of the sheet would impair the luster of the surfaces and that it is immaterial that Saidel's sheets are polished on both sides, since the appealed claims are not limited to polishing on one side only.

It is clear that Saidel was not concerned with the protection or preservation of a surface of high luster on his material. The two faces which the board apparently relies on in connection with such preservation are the opposed surfaces of the mouth of Saidel's pouch or perhaps the inside face of the flap and the front of his pouch. Such surfaces are visible only when the pouch is open. Nothing is said by Saidel about keeping them polished and there obviously is no reason for doing so. In fact they would constantly be subject to tobacco dust and flakes when the pouch is in use. The concept of preserving a high luster surface is totally lacking.

Saidel makes no reference whatever to any time relationship between the polishing of the surfaces and their being brought into contact. In the process as described by him, a polished sheet, cut into a blank of suitable size and shape, is folded and heat-sealed to form the pouch. Subsequently the pouch is filled, after which the mouth of the pouch is sealed and the flap is folded into place to produce what the board evidently considered to be the "two-ply material" of the appealed claims. It is apparent that the cutting, folding and sealing of the sheet and the filling of the pouch would require a substantial period of time and would involve a material amount of handling of the polished surfaces which it is appellant's object to avoid. Accordingly,

the joining of the polished surfaces in closing the pouch would not take place "immediately" after one surface was polished, as required by claims 13, 14, 15, and 16.

The only polishing disclosed by Saidel is done as follows: Starting with "calendered plasticized vinyl resin sheets," which he describes as being translucent and having "a slightly rough surface," he assembles two sheets with certain decorative indicia sandwiched between them. He says, "I * * * place the assembly between polished platens of a press and subject same to a pressure of about 100 lbs./in.² and a temperature of about 350° F. for about 3 to 4 minutes. *The assembly is then cooled while under pressure.*" [Emphasis ours.] What he removes from the press, therefore, is a finished, pressure-polished, cooled sheet which he describes as "an integral clear transparent sheet, the surfaces of which are pressure-sensitive when overlapped into face contact and pressed together with the fingers." After making such sheets, he then proceeds with his pouch-manufacturing operations and not until they are over and the pouch filled with tobacco does he do any of the pressing together of polished surfaces upon which the Patent Office relies for rejection.

For the reasons given, it is clear that Saidel's process does not respond to the terms of any of claims 13 to 16, even if the flap and the sides of the pouch, which are overlying parts of the same sheet, can properly be said to be "two-ply sheet material" within the meaning of those claims. Since Saidel's process would seem, inherently, to preclude the "immediate" joining of the polished surfaces of the flap and pouch, and since there is no reason, so far as his objectives are concerned, for joining them immediately, we are of the opinion that such immediate joinder is not suggested by the reference and would not be obvious therefrom.

Claim 19 recites a process involving the passing of a sheet through polishing rollers and over cooling rollers and then, with another similarly treated sheet, through cold pressure rollers at a suffi-cient pressure to unite the sheets. No such process is suggested by Saidel. Moreover, since the polishing is done before the sheet is cut into blanks, Saidel does not disclose the continuous polishing, cooling, and pressure joining of two sheets which is contemplated by claim 19. In fact, the pressure joining is not that of two sheets but of two parts of a single sheet.

Appellant is concerned with a result entirely different from anything suggested by Saidel. While there is superficial similarity in a literal sense only between some of the steps of the claims and Saidel's disclosure, the appealed claims point out significant differences which enable appellant to attain a result neither attained nor aimed at by Saidel, and, accordingly, the claims are considered to be allowable over this reference.

The decision of the Board of Appeals is reversed.

Reversed.