**HARDWARE DEALERS MUTUAL FIRE INSURANCE COMPANY, Petitioner,**

**v.**

**FARMERS INSURANCE EXCHANGE et al., Respondents.**

No. B–1437.

Supreme Court of Texas.

July 30, 1969.

Rehearing Denied Oct. 1, 1969.

Bean & Manning, Frank M. Bean, Houston, for petitioner.

Baker, Botts, Shepherd & Coates, Stephen A. Wakefield, Houston, for respondents.

POPE, Justice.

Farmers Insurance Exchange instituted this suit for declaratory judgment against

Hardware Dealers Mutual Fire Insurance Company seeking a determination of the extent, if any, automobile liability insurance coverage is afforded Anita Hyde by a family auto policy issued by Farmers to Anita's father, or by an auto garage policy issued by Hardware to Frizzell Pontiac, the owner of the car Anita Hyde was driving at the time of an accident. The suit also asked for a declaration concerning the insurers' duty to defend a pending action against Anita Hyde by reason of the accident. Both Farmers' and Hardware's policies had clauses which restricted liability or coverage in the event of other insurance. The courts below have held that Hardware owed the primary coverage up to the limits of its policy as well as the duty to defend Anita Hyde. 437 S.W.2d 390. We reverse the judgments of the courts below and render judgment that the two insurers must apportion liability, and each has the duty to defend.

Anita Hyde, daughter of John Hyde, who was covered by Farmers' policy issued to her father, on May 26, 1966 entered the premises of Frizzell Pontiac in Houston, Texas, for the purpose of purchasing a new auto. While on a test drive in a new 1966 Pontiac with Frizzell's permission, she was involved in a collision with another auto driven by Hugo Teste. Teste instituted suit against Hyde as a result of the accident and that suit is now pending.

Hardware says the courts below erred in fixing all liability upon it. It argues that its policy afforded coverage on the Frizzell Pontiac automobile which was permissively driven by Anita Hyde when she had the accident, but that its policy contained an escape clause, specific in nature, which excluded all coverage if Anita Hyde, the permissive driver, had other collectible insurance. It says that Anita had other insurance with Farmers and that Hardware's escape clause should be given force to free it of all liability. Farmers, on the other hand, says that its policy afforded only excess coverage to Anita under a policy issued to her father who was the named insured. Anita was driving a non-owned automobile and was covered by Farmers' policy except that the policy contained an "other insurance" clause which limited Farmers' coverage to excess insurance if Anita had other valid insurance. Farmers says Anita had such other insurance by reason of Hardware's policy. Thus, Farmers says it owes excess liability only, because of Hardware's other insurance; Hardware says its escape clause is the more specific of the two clauses and it escapes all liability. The questions presented are whether the two restrictive provisions conflict, and if so, how the conflict should be resolved.

Farmers issued to John Hyde a standard Texas automobile owners insurance policy, on a 1966 Ford truck, with limits for personal injury of $10,000 per person, $20,000 per accident, and $5,000 coverage for property damage. The policy provided that the named insured and his family would be provided with coverage while driving an automobile which the insured did not own. This has been called the drive-other-car clause. Farmers' policy contained restrictions upon its liability as to a driver of a non-owned vehicle. The courts below have held that Farmers was liable only for excess insurance under this provision in its policy:

1. "Other insurance. If the insured has other insurance against a loss covered by Part I of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limits of liability of all valid and collectible insurance against such loss; provided, *however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance.*" (Emphasis added)

Hardware issued to Frizzell Pontiac a garage auto liability policy. Its policy

insured any person against claims for bodily injury or property injury while permissively using an auto belonging to Frizzell. The policy limits were $500,000, $1,000,000, and $50,000. The policy included a special endorsement known as Form 53 which contained a non-liability or escape clause. The purpose of the clause was to exclude from coverage permissive users of Frizzell Pontiac's automobile who were covered by other insurance. The endorsement also limited liability as to an unnamed insured, and a permissive user such as Anita Hyde, to the minimum limits of liability specified in the Texas Financial Responsibility Law. The endorsement in part provided:

"In consideration of the reduced rate of premium made applicable to the insurance under Part I, it is agreed that the policy is amended as follows:

1. Paragraph 3 of 'Persons Insured' is amended to read as follows, and paragraphs 4 and 5 below are added, all subject to exceptions (i), (ii), (iii) and (iv) as set forth in the policy.

\*     \*     \*     \*     \*     \*

'(3) With respect to an automobile to which the insurance applies under paragraph 1(a) of the Automobile Hazards, any of the following persons while using such automobile with the permission of the named insured, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission.'

(a) any employee, director or stockholder of the named insured, any partner therein and any resident of the same household as the named insured, such employee, director, stockholder or partner,

(b) *any other person, but only if no other valid and collectible automobile liability insurance, either primary or excess,* with limits of liability at least equal to the minimum limits specified by the financial responsibility law of the state in which the automobile is principally

garaged, is available to such person; provided that with respect to Coverage C, such person shall be deemed to be a person for whom insurance is afforded. whether or not there is any other valid and collectible automobile liability insurance. (Emphasis added).

\*     \*     \*     \*     \*     \*

2. Paragraph 1(a), (b), and (c) of 'Limits of Liability' under Part 1 is made subject to the following provision:

'Provided that with respect to a person described as insured under paragraph (3) (b) of Persons Insured and any person or organization legally responsible for the use of the automobile by such person, other than the named insured and any person or organization described in paragraph (3) (a) of Persons Insured,

(i) the applicable limit of the company's liability shall be the amount by which (1) applicable minimum limit of liability for bodily injury or property damage specified in the financial responsibility law of the state in which the automobile is principally garaged exceeds (2) the sum of the applicable limits of liability under all other valid and collectible insurance available to the insured, and

(ii) the insurance under this policy shall not apply to any loss with respect to which the insured has other valid and collectible insurance unless the total amount of the loss exceeds the sum of the limits of liability of all other policies affording such other insurance and the company shall then be liable, subject to clause (i) foregoing, only for the excess.' "

We have two policies which appear to contain overlapping clauses. We must determine whether the clauses conflict or can be harmonized. To narrow the question, we restate the two clauses:

Farmers' policy: " \*   \*   \*   *however, the insurance with respect to a temporary*

*substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."* (Emphasis added)

Hardware's policy: " * * * *any other person, but only if no other valid and collectible automobile liability insurance, either primary or excess,* with limits of liability at least equal to the minimum limits specified by the financial responsibility law of the state in which the automobile is principally garaged, is available to such person; * * *." (Emphasis added).

Farmers and Hardware concede that Anita Hyde would be covered by either policy but for the existence of the other. They concede that, whatever construction we might give to the two policies, Anita Hyde as the insured person is not to have less coverage than if she had been protected by only one of the policies. This concession is in accord with settled principles because a different result would be unconscionable. Allstate Insurance Co. v. Shelby Mutual Ins. Co., 269 N.C. 341, 152 S.E.2d 436 (1967); 8 Appleman, Insurance Law & Practice, § 4913, p. 386 (2d ed. 1962).

The development of "other insurance" clauses began in the area of property insurance. Insurers included provisions in their policies which would avoid an insured's temptation or fraud of over-insuring his property or of inflicting self-injury. Such limitations of liability met with approval. See Concurrent Coverage in Automobile Liability Insurance, 65 Colum.L. Rev. 319, 320 (1965); Note, 38 Minn.L. Rev. 838, 840 (1954). In the field of automobile insurance, "other insurance" provisions have generally been treated differently, because the moral hazard of self-injury is not present as in the case of insurance upon property and because of the trend toward expanding coverage to include other insureds. In expanding coverage, however, insurers have hedged about their coverage by "other insurance"

provisions. We have the situation of insurers writing policies which seek both to expand and yet limit their coverage.

In automobile insurance, three kinds of "other insurance" clauses have developed as devices to limit coverage or liability. (1) A pro rata clause restricts liability upon concurring insurers to an apportionment basis. (2) An excess clause restricts liability upon an insurer to excess coverage after another insurer has paid up to its policy limits. (3) An escape clause avoids all liability in the event of other insurance. Such clauses ordinarily present no problem and are given effect when only one of the concurrent policies has an "other insurance" clause. Problems arise when more than one policy covers the same insured and each policy has an "other insurance" clause which restricts its liability by reason of the existence of other coverage.

Conflicts between provisions in concurrent insurance have arisen in a number of areas and they are classified in 7 Am.Jur. 2d, Automobile Insurance, § 202. With some rearrangement and editing, those classes fall into these groups: (1) One policy contains an excess clause and the other contains a pro rata clause, see 76 A.L.R.2d 512; (2) One policy contains a non-liability or escape clause and the other contains a pro rata clause, see 46 A.L.R.2d 1167; (3) Both policies contain an excess clause, see 69 A.L.R.2d 1122; (4) One policy contains an excess clause and the other a non-liability or escape clause, see 46 A.L.R.2d 1165; (5) One policy contains what has been termed a specific escape clause which specifies the kind of "other insurance," the existence of which relieves the former insurer of liability, see 46 A.L.R.2d 1168. See 8 Blashfield, Cyclopedia of Automobile Law & Practice, §§ 345.10–345.14. Our problem primarily centers upon a discussion of the last two kinds of clauses.

Courts have tried a number of methods for harmonizing apparently conflicting

clauses. Courts at first tried the "prior-in-time" theory by which a court, looking to the effective date of concurrent policies, made liable the insurer whose policy was earliest in time. New Amsterdam Casualty Co. v. Hartford Accident & Indemnity Co., 6 Cir., 108 F.2d 653 (1940). The method has been criticized as arbitrary, one of convenience rather than reason, and because the time of coverage is not so significant as the vital fact that there was coverage at the time of an accident. Most courts have abandoned this method. Other courts have decided cases by determining who was the primary tort-feasor and the directness of his relationship to the insurer. Liability under such a method would rest upon the insurer whose named insured, as distinguished from an additional insured, is the tortfeasor. This method, too, has been declared arbitrary and has been rejected by most courts. Zurich General Accident & Liability Ins. Co. v. Clamor, 124 F.2d 717 (7th Cir. 1941). The method would deny coverage for a unnamed or additional insured even though it was the intent of an insurer under a policy to cover him as an insured. The method is not helpful in an instance of a tort-feasor who is the named insured in both policies, or as in this case, is unnamed in either policy. A third method used for reconciling double insurance clauses has been that of determining which one of the "other insurance" provisions is the more specific in its restriction, and then giving effect to the specific over the general clause. Trinity Universal Ins. Co. v. General Accident, Fire & Life Assurance Co., 138 Ohio St. 488, 35 N.E.2d 836 (1941). This appears to be the method by which most courts currently resolve what appears to be a conflict between clauses.

Escape clauses were formerly written in general terms. Most courts have concluded that a general escape clause must yield to the more specific excess clause. Hence, the policy containing the general escape clause usually must bear all liability. Appleman states, in 8 Appleman, Insurance Law & Practice, § 4914 (2d ed. 1962):

"It has been held that where the owner of an automobile or truck has a policy with an omnibus clause, and the additional insured also has a nonownership policy which provides that it shall only constitute excess coverage over and above any other valid, collectible insurance, the owner's insurer has the primary liability. In such case, the liability of the excess insurer does not arise until the limits of the collectible insurance under the primary policy have been exceeded. It should be noted that under this rule, the courts give no application to the other insurance clause in the primary policy, which provides that if the additional insured has other valid and collectible insurance, he shall not be covered by the primary policy. That is because the insurance under the excess coverage policy is not regarded as other collectible insurance, as it is not available to the insured until the primary policy has been exhausted. Or, to put it another way, a non-ownership clause, with an excess coverage provision, does not constitute other valid and collectible insurance within the meaning of a primary policy with an omnibus clause."

The following cases have applied the above rule: Zurich General Accident & Liability Ins. Co. v. Clamor, 124 F.2d 717 (7th Cir. 1942); Michigan Alkali Co. v. Bankers Ind. Ins. Co., 103 F.2d 345 (2nd Cir. 1939); Continental Cas. Co. v. Curtis Publishing Co., 94 F.2d 710 (3rd Cir. 1938); New Amsterdam Cas. Co. v. Certain Underwriters at Lloyds, London, 34 Ill.2d 424, 216 N.E.2d 665 (1966); Zurich Ins. Co. v. Continental Cas. Co., 239 Md. 421, 212 A.2d 96 (1965); Commercial Cas. Ins. Co. v. Hartford Accident & Ind. Co., 190 Minn. 528, 252 N.W. 434, 253 N.W. 888 (1934); Travelers Ind. Co. v. State Auto Ins. Co., 67 Ohio App. 457, 37 N.E.2d 198 (1941); Grasberger v. Liebert and Obert, 335 Pa. 491, 6 A.2d 925, 122 A.L.R. 1201 (1939). In Zurich Ins. Co. v. New Amsterdam Cas. Co., 117 Ga.App. 426, 160 S.E.2d 603 (1968), the court applied the test in a case of two excess clauses.

Faced with these decisions which cast primary liability upon the insurer whose policy contained the more general clause, many insurers redrafted the wording of their general escape clauses in order to out-specific the specific excess clauses in other policies. The general escape clause used in the cases cited above was ordinarily phrased to exclude coverage if the insured "is also covered by other valid and collectible insurance." Hardware's escape clause was not so general; it was specific in its provision that it afforded coverage of "any other person, *but only if no other valid automobile liability insurance, either primary or excess* . . . is available to such person; * * *." (Emphasis added). We are thus presented with a case of Farmers' specific excess clause which confronts Hardware's specific escape clause.

A number of more recent cases have given controlling force to the specific escape clause over the excess clause. United States Fidelity and Guaranty Co. v. Dixie Auto Ins. Co., 292 F.2d 554 (N.D.Ala. 1968); Indiana Lumbermens Mutual Ins. Co. v. Mitchell, 285 F.Supp. 969 (E.D.Ill. 1968), aff'd 409 F.2d 392 (7th Cir. 1969); Continental Cas. Co. v. Weekes, 74 So.2d 367, 46 A.L.R.2d 1159 (Fla.Sup.Ct.1954); Government Employees Ins. Co. v. Globe Ind. Co., 415 S.W.2d 581 (Ky.C.C.A.1967); Allstate Ins. Co. v. Shelby Mutual Ins. Co., 269 N.C. 341, 152 S.W.2d 436 (1967); Government Employees Ins. Co. v. Lumbermens Mutual Cas. Co., 269 N.C. 354, 152 S.E.2d 445 (1967); Faltersack v. Vanden Boogaard, 39 Wis.2d 64, 158 N.W.2d 322 (1968). In Government Employees Ins. Co. v. Globe Ind. Co., supra, Kentucky gave force to a specific escape clause to excuse the insurer of liability, and distinguished its earlier decisions which reached an opposite result under policies which included only the general escape clause. Other cases have also given controlling force to a specific escape clause, though the conflict was with a clause other than an excess clause. See Continental Cas. Co. v. Suttenfield, 236 F.2d 433 (5th Cir.1956). The courts have reached this result by a strict construction of the words of the overlapping clauses or by treating the escape clause as a condition to coverage coming into being.

The court of civil appeals in the instant case did not follow any of the above methods. It employed still a different method in reaching its judgment that Hardware must bear the primary liability in spite of its specific escape clause. That court held that Hardware's escape and Farmers' excess provisions are both specific and are in conflict. It then allocated the "respective policy coverage in the light of the total policy insuring intent, as determined by the primary policy risks upon which each policy's premiums are based and as determined by the primary function of each policy." It thus gave full effect to Farmers' excess clause, no effect to Hardware's specific escape clause, and cast all primary liability upon Hardware. This approach to the problem finds little support in the precedents. The method was used in Federal Ins. Co. v. Prestemon, 278 Minn. 218, 153 N.W.2d 429 (1967), and in a concurring opinion from an intermediate court of Louisiana. State Farm Mutual Auto. Ins. Co. v. Travelers Ins. Co., 184 So.2d 750 (3rd Cir. La.App.1960). Louisiana, however, has rejected the method. Graves v. Traders & General Ins. Co., La.App., 200 So.2d 67, aff'd 252 La. 709, 214 So.2d 116 (1968).

The many methods employed for the solution of the problem of double coverage by conflicting clauses have produced much confusion. Each method has been described as a mechanical application of some arbitrary test. The prior-in-time and the search for a primary tort-feasor have been largely rejected. The fixing of liability by determining which of two specific clauses is the more specific is no better. Moreover, it encourages the continuing battle of draftsmanship of still more specific policy terms, and the end is not in sight. 65 Colum.L.Rev. 319, 322 (1965). Because of Hardware's policy, Farmers says it owes

only excess insurance. Because of Farmers' policy, Hardware says it owes nothing. To solve the problem by picking up one policy, and reading it with a result which would be opposite to that reached if the other policy were first picked up, is a solution which does not satisfactorily solve the circular riddle.

Neither do we approve the method used by the court of civil appeals. We question the capacity of courts to make valid legal determinations of policy intent by measuring the actuarial risks and the allocation of premiums to those risks. Indeed, upon such a premise, Hardware should have won in the courts below, since its policy stated that its escape clause justified a premium reduction to its insured. Even so, it is not clear that the premium reductions were occasioned by the exclusion of risks under its specific escape clause or by the reduction of limits of liability as to a permissive user.

In our opinion, this case is best decided by a return to settled principles which give dominant consideration to the rights of the insured. Both insurers make the concession, which is usually made in these disputes, that whatever result we reach about the insurers' rights, the insured's coverage must be no less than if she had been protected by only one of the policies. Implicit in that concession is the idea that the policies should be construed liberally in favor of the rights of the insured and strictly against the insurer. The sense of the hard logic employed by the insurers against each other, if urged against the insured, would lead to a conclusion that the insured, though possessed of two policies, actually had none at all. This logic between themselves rather assumes and takes for granted that the insured has nothing at stake, since the concession is supposed to supply that protection. With the issues sharply drawn between the two insurers, the insured is actually left on the sidelines. Other than the stated concession that she will not be permitted to lose anything in the fight, she is hardly considered. She

is not only unnamed; she is largely unheard. In the process, however, the insured has lost something. She loses the benefit of the rule which requires a construction of the policy, either one of them, strictly against the insurer, both of them, and liberally for the insured. Continental Cas. Co. v. Warren, 152 Tex. 164, 254 S. W.2d 762 (1953); Providence Washington Ins. Co. v. Proffitt, 150 Tex. 207, 239 S. W.2d 379 (1951). She loses by reason of the long delay of several years duration, as do the other litigants, while the insurers litigate whether she is covered by insurance and who will defend her. We do not hold that the insured is a necessary party to these actions; we hold that in construing two policies against each other, the rule that the insured's rights are favored still prevails.

In Continental Cas. Co. v. Warren, supra, the question was that of coverage of an insured. Despite the provisions of the policy, this court held that "the insurer may not escape liability merely because his or its interpretation should appear to us a more likely reflection of the intent of the parties than the interpretation urged by the insured. The latter has to be no more than *one which is not itself unreasonable*." (Emphasis added). The case is not controlling, but it states what to us is a sounder means for resolving issues between double insurers, and for doing so with the rights of the insured paramount. We, therefore, shall follow this rule: When, from the point of view of the insured, she has coverage from either one of two policies but for the other, and each contains a provision which is reasonably subject to a construction that it conflicts with a provision in the other concurrent insurance, there is a conflict in the provisions. In our opinion, the provisions in Farmers' and Hardware's policies are reasonably subject to a construction that they conflict.

A repugnancy between the policy provisions of two policies has usually been solved by ignoring the two offending pro-

visions. The result is that Hardware's policy, minus its escape clause, covers the insured; Farmers' policy, minus its excess clause, covers the insured. The insured is thus insured by both insurers which is a reasonable result since both insurers wrote expanded coverage policies which they must have intended should reach her, and this problem of double insurance was "involuntarily thrust upon the insured through the operation of another's insurance contract." 38 Minn.L.Rev. 838, 851 (1954). Cases which support this view are Oregon Automobile Ins. Co. v. United States Fidelity and Guaranty Co., 195 F.2d 958 (9th Cir. 1952); Employers Mutual Cas. Co. v. M. F. A. Mut. Ins. Co., 384 F.2d 111 (10th Cir. 1967); Gilkey v. Andrew Weir Ins. Co., 291 F.2d 132 (9th Cir. 1961); Peerless Cas. Co. v. Continental Cas. Co., 144 Cal.App.2d 617, 301 P.2d 602 (1956); Graves v. Traders & General Ins. Co., La. App., 200 So.2d 67, aff'd 252 La. 709, 214 So.2d 116 (1967); Cotton v. Associated Ind. Corp. of San Francisco, La.App., 200 So.2d 78, writ ref., 251 La. 71, 203 So.2d 88 (1967); State Farm Mutual Auto. Ins. Co. v. Travelers Ins. Co., 184 So.2d 750 (3rd Cir. La.App.1966); Lincombe v. State Farm Mutual Auto. Ins. Co., 166 So.2d 920 (3rd Cir. La.App.1964); Sparling v. Allstate Ins. Co., 439 P.2d 616 (Or.Sup.Ct.1968). The Supreme Court of Tennessee in United States Automobile Association v. Hartford Accident & Indemnity Co., 414 S.W.2d 836 (Tenn.Sup.Ct.1967), in holding the clauses of the policy creating the double insurance problem cancelled the other out said:

" * * * It is entirely clear that the general insuring agreement of both policies with which we are here concerned afford coverage in the instant case to the assured. * * * Under the authorities urged upon us, it seems inescapable that the rights of the assured become badly obscured, if not defeated, by the contractual contest engaged in by casualty insurers.

* * * * * *

" * * * if one starts with United's policy and attempts to determine if the Hartford policy constitutes other valid and collectible insurance, one can only use the terms contained in Hartford's policy to determine if it is other valid and collectible insurance and, under the terms of Hartford's policy, it is not. If one starts with Hartford's policy and attempts to determine if United's policy is other valid and collectible insurance, one must consider the terms of United's policy, and can only reach the conclusion that under the terms of United's policy, it is not other valid and collectible insurance. Therefore, both policies would appear to provide coverage.

"It seems to us that the only reasonable result to be reached is a proration between the two insurance companies in proportion to the amount of insurance provided by their respective policies. * * *."

Hardware's limits of liability as to an unnamed insured under the provisions of its policy, set forth above, are the minimum limits specified in the financial responsibility law of Texas. Farmers' limits of liability are the same. The insured in this case has coverage up to those limits from both Hardware and Farmers. The two concurrent policies cover Anita Hyde. The liability is equally prorated between the two companies and each has an obligation to defend the insured.

The judgments of the courts below are reversed and judgment is rendered declaring that the liability of Hardware and Farmers is pro rata up to the minimum limits of the financial responsibility law and that each has an obligation to defend Anita Hyde. Costs are adjudged against Farmers.