# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-40676

COLONY NATIONAL INSURANCE COMPANY,

Plaintiff - Appellee

v.

UNITED FIRE AND CASUALTY COMPANY,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

January 31, 2017

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 5:14-CV-10

Before WIENER, CLEMENT, and HIGGINSON, Circuit Judges.

JACQUES WIENER, Circuit Judge:*

Plaintiff-Appellee Colony National Insurance Company ("Colony") claims that Defendant-Appellant United Fire & Casualty Company ("United") had a duty to defend Carothers Construction, Incorporated ("Carothers") in a personal injury lawsuit and seeks to recover half the costs of defending Carothers in that lawsuit. The district court granted Colony's motion for summary judgment, holding that United owed a duty to defend Carothers in

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-40676

the underlying lawsuit and owed Colony half the costs of defending Carothers. United appeals that ruling, contending that the district court erred in holding that it had a duty to defend Carothers in the underlying lawsuit and that it owed Colony half the costs defending Carothers. We affirm.

## I.

## FACTS AND PROCEEDINGS

### A. Factual Background

Carothers was the general contractor on a Red River Army Depot job. Self-Concrete, Inc. ("Self-Concrete"), a sub-contractor of Carothers, contracted to form and pour tilt wall concrete panels. United insured Self-Concrete through a commercial general liability policy, and Carothers was an additional insured under the United policy.

Premier Constructors, Inc. ("Premier") was a sub-contractor of Carothers, hired to erect tilt wall panels. Premier hired Joyce Steel Erection ("Joyce") to hoist and lift the tilt wall panels. Colony insured Premier and further insured Carothers as an additional insured.

Gordon Bonner ("Bonner"), an employee of Premier, filed a lawsuit against Carothers, Self-Concrete, and Joyce, following an accident on the jobsite (the "Bonner lawsuit"). According to Bonner, the accident occurred when one of Self-Concrete's tilt walls was being hoisted into place and the panel swung out in an uncontrolled manner, pinning Bonner against a retaining wall. As a result, Bonner suffered severe injuries.

Carothers tendered defense to United and Colony in the Bonner lawsuit. Colony accepted the tender and defended Carothers; United declined to defend Carothers.[1] The Bonner lawsuit was ultimately settled.

---

[1] United did defend Self-Concrete in the Bonner lawsuit.

No. 16-40676

### B. Procedural Background

Colony filed this action against United for breach of contract, with claims for subrogation and contribution for United's refusal to defend Carothers in the Bonner lawsuit. United claimed that Bonner did not allege facts under which coverage for Carothers was invoked by its policy because Bonner did not allege facts or claims that imputed liability of Self-Concrete to Carothers. Colony and United filed cross-motions for summary judgment. The district court referred the motions to a magistrate judge and ultimately adopted the magistrate judge's report and recommendation, granting Colony's motion for summary judgment and denying United's motion. The court concluded that United was responsible for one-half of Colony's costs incurred in defending Carothers in the Bonner lawsuit, including, pre- and post-judgment interest. United appeals.

## II.

### STANDARD OF REVIEW

"We review a grant of summary judgment *de novo* under the same standard applied by the district court."[2]  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]  We consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.[4]

---

[2] *Boone v. Citigroup, Inc.*, 416 F.3d 382, 392–93 (5th Cir. 2005).

[3] FED. R. CIV. P. 56(a).

[4] *See Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 856 (5th Cir. 2014).

3

No. 16-40676

## III.

## ANALYSIS

### A.     The Duty to Defend

Under Texas law, the duty to defend and the duty to indemnify are distinct and separate duties.[5] The duty to defend is the broader of the two.[6] An insurer's duty to defend is governed by the eight-corners or complaint-allegation rule. It determines the duty to defend by examining "the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations."[7] We therefore look only to the "eight corners" of the two documents, viz., the pleadings in the underlying lawsuit and the insurance contract between the insurer and insured, to determine if the insurer has a duty to defend.[8] "Even if the plaintiff's complaint alleges multiple claims or claims in the alternative, some of which are covered under the policy and some of which are not, the duty to defend arises if at least one of the claims in the complaint is facially within the policy's coverage."[9] Whether an insurer is obligated to defend an insured is a question of law for the court to decide.[10]

United does not dispute that Carothers is an additional insured under its policy with Self-Concrete. However, United argues that it does not owe a duty to defend Carothers in the Bonner lawsuit because Bonner did not allege claims against Self-Concrete that can be imputed to Carothers.

---

[5] *King v. Dall. Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).

[6] *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W. 3d 487, 490 (Tex. 2008); *St. Paul Ins. Co. v. Tex. Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex. App. – Austin 1999, writ denied).

[7] *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006).

[8] *King*, 85 S.W.3d at 187.

[9] *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 393 (5th Cir. 1995).

[10] *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 736 (Tex. App. – Fort Worth 1996, writ denied).

1. Bonner's Petition[11]

Bonner alleged that Carothers undertook "to perform services they knew or should have known were necessary for . . . BONNER'S protection." Bonner also alleged that Carothers was under an obligation to ensure that work on the jobsite was implemented, complied with, and enforced, in accordance with its contracts and with (1) the U.S. Army Corps of Engineers Safety and Health Requirements Manual, (2) Occupational Safety and Health Administration ("OSHA") Regulations, and (3) Carothers's Safety Policy/Accident Prevention Plan, as well as, ensuring subcontractor implementation, compliance, and enforcement under the same. Bonner claimed that Carothers breached its duty to Bonner with respect to ensuring that (1) he had a safe place to work, (2) unsafe conditions were corrected, including bringing such unsafe conditions to the attention of subcontractors, and (3) subcontractors complied with applicable safety plans and OSHA regulations. Bonner alternatively pled that Carothers had general supervisory authority and control over the jobsite, including the power to detect, correct, require others to correct, and prevent unsafe conditions and safety hazards on the site. Bonner further alleged that Carothers failed to implement an effective system for promptly correcting discovered hazards and failed to ensure subcontractor compliance with safety requirements.

Bonner claimed that Self-Concrete had a duty to follow the plans furnished by Carothers properly in forming, pouring, and preparation of the concrete tilt-up panels, and that it had breached such duty.[12] Bonner also alleged that the subcontract required Self-Concrete to clean the jobsite at the

---

[11] For the eight corners review we focus on the most recently filed petition. *See Rhodes v. Chicago Ins. Co., a Div. of Interstate Nat'l Corp.*, 719 F.2d 116, 119 (5th Cir. 1983).

[12] "Tilt-up panels" and "tilt wall panels" are used interchangeably in Bonner's petition and the parties' briefs.

5

No. 16-40676

end of each day, but failed to clean up at the worksite in question, which resulted in a dangerous jobsite condition that was a direct and proximate cause of Bonner's injuries. Bonner additionally alleged gross negligence in Self-Concrete's failure to clean the worksite so that workers coming in to assist in the erection of the tilt wall would have a clear area in which to do their work, amounting to an extreme degree of risk to Bonner.

2. Bonner's Petition Applied to the United Insurance Policy

Relevant United policy language states:

> Additional Insured – Owners, Lessees or Contractors – Automatic Status When Required in Construction Agreement With You
>
> a. Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. **Such person or organization is an additional insured only with respect to your liability which may be imputed to that person or organization directly arising out of your ongoing operations performed for that person or organization.** A person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed.

Based on the United policy's language, we must decide whether Bonner's pleadings sufficiently allege liability with respect to Self-Concrete which may be imputed to Carothers directly arising out of Self-Concrete's ongoing operations performed for Carothers.

United contends that Bonner's allegations are based solely on the independent acts of Carothers and Self-Concrete and that there are no facts or theories that support imputed liability. United reasons that, because the accident was caused by an out of control tilt wall panel, and the contract

between Self-Concrete and Carothers specifically excluded lifting tilt wall panels from the scope of Self-Concrete's work, it is not under a duty to defend Carothers. However, Bonner expressly alleges that Carothers retained authority over the jobsite and plans for the tilt wall panels and further failed to ensure that its subcontractors abided by the requirements and standards contained in the subcontracts. This is sufficient to find liability on the part of Self-Concrete, which may be imputed to Carothers, giving rise to a duty to defend.[13]

Although an employer is not generally liable for the negligence of an independent contractor,[14] an employer may be liable when it controls "operative details" of the independent contractor's work.[15] To have control of "operative details," the employer must have "the right to control the means, methods, or details of the independent contractor's work to the extent that the independent contractor is not entirely free to do the work his own way."[16] The right to "inspect, test, and approve" the independent contractor's work to ensure compliance with the contract specifications and safety requirements

---

[13] The parties disagree about the definition of imputed negligence. Bonner has stated facts on which negligence could be imputed to Carothers under either definition urged by the parties. *See Imputed Negligence*, BLACK'S LAW DICTIONARY (9th ed. 2009) ("Negligence of one person charged to another; negligence resulting from a party's special relationship with another party who is originally negligent – so that, for example, a parent might be held responsible for some acts of a child."); *see also Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex. 1990) (setting forth the proposition that in Texas, when a policy contains no technical definitions of words it uses, the words must be given their plain, ordinary, and generally accepted meanings).

[14] *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 542 (Tex. 2002).

[15] *See Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788 , 792 (Tex. 2006) (quoting RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (AM. LAW INST. 1965)).

[16] *Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693, 700 (Tex. App. – Houston [14th Dist.] 2007, pet. denied).

does "not implicate a right to control the details of the independent contractor's work."[17]

Here, Bonner alleged that Carothers provided plans for the tilt wall panel formation to Self-Concrete. Providing "plans" may be typical of a general contractor and may not rise to the level of imputing liability to a general contractor for the purposes of tort liability.[18] However, Bonner alleged that Carothers's control over the "plans" included much more than simply furnishing the plans. Moreover, Bonner's petition set forth the detailed level of control that Carothers exercised over the jobsite and Self-Concrete's work, which, in addition to following the terms of its contracts, included having the right and duty to enforce regulations of the U.S. Army Corps of Engineers, OSHA, and Carothers's own Safety Policy/Accident Prevention Plan, which were incorporated into Carothers and Self-Concrete's subcontract. This level of control over Self-Concrete's actions amounts to "operative control" so that United was under a duty to defend Carothers in the Bonner lawsuit.

This is especially true under Texas's broad scope of the duty to defend which extends even "[w]here the [petition] does not state facts sufficiently to clearly bring the case within . . . coverage", because "the general rule is that the insurer is obligated to defend if there is, potentially, a case under the [petition] within the coverage of the policy." [19]

---

[17] *Victoria Elec. Co-op., Inc. v. Williams*, 100 S.W.3d 323, 330 (Tex. App. – San Antonio 2002, pet. denied).

[18] *See Inclan v. Gen. Homes Corp.*, No. 14-94-00995-CV, 1996 WL 401002, *3 (Tex. App. – Houston [14th Dist.] July 18, 1996) (citing Restatement Second of Torts § 414, cmt. c (1965); *Newspapers Inc. v. Love*, 380 S.W.2d 582, 588 (Tex. 1964)).

[19] *GuideOne*, 687 F.3d at 683 (quoting *Nat'l Union Fire Ins. Co v. Merchant Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997)) (first and last alteration in original); *see also Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008) ("When in doubt, defend."); *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965) ("[I]n case of doubt as to whether or not the allegations of a complaint . . . state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the

## B.     Priority of Coverage

Under Texas law, when coverage is triggered under policies issued by different insurers for a claim of injury, the duty to defend is absolute because the insurance contract requires the insurer to defend the insured, not merely to provide a partial or pro rata defense.[20] Each insurer whose policy obligations are triggered independently owes the insured a complete defense.[21] To determine priority of coverage, a court must first determine whether the insured is entitled to complete coverage by each of the insurers involved.[22] If the insured is covered by each insurer, then the court will determine if each applicable policy contains an "other insurance" clause that seeks to limit coverage of liability.[23] If both policies under consideration contain a provision that negates liability because of the existence of another policy, then the conflicting provisions are mutually repugnant and are ignored, and the liability is applied on a pro rata basis between the insurers.[24]

United argues that even if the court finds that it was required to defend Carothers in the Bonner lawsuit, it need not cover half the costs of defense to Carothers because the Colony policy is primary and non-contributing, and the United policy is excess.

### 1.   The "Other Insurance" Clauses

Both the United policy and the Colony policy contain "other insurance" clauses. These policies mirror each other as to "other insurance" and state that

---

action, such doubt will be resolved in [the] insured's favor.") (internal quotation marks omitted).

[20] *Tex. Prop. & Cas. Ins. Guar. Ass'n v. Sw. Aggregates, Inc.*, 982 S.W.2d 600, 607 (Tex. App. – Austin 1998, no pet.).

[21] *Id.* at 605.

[22] *Hardware Dealers Mut. Fire Ins. v. Farmers Ins. Exch.*, 444 S.W.2d 583, 589 (Tex. 1969).

[23] *Id.*

[24] *Id.* at 590.

defense costs should be shared equally. Both policies are primary policies, except when dealing with an additional insured like Carothers. When coverage is needed for Carothers, both policies become excess. As a result, the "other insurance" clauses are mutually repugnant, cancelling each other out and requiring the equal sharing of defense costs.[25] Consequently, Colony and United were obligated to share in the costs of defending Carothers in the Bonner lawsuit.

2. <u>The Colony Policy's Primary and Non-Contributing Insurance Endorsement</u>

United claims that, even if it is obligated to share in the defense costs of defending Carothers, the Colony policy's "Primary and Non-Contributing Insurance Endorsement" negates its duty and forces the United policy to be excess to the Colony policy. United claims that because the endorsement "deletes in its entirety and replaces" the Colony policy's "other insurance" clause as to the third party, any argument that the "other insurance" clause in the Colony policy requires United to share in defense costs is completely negated. United argues that since no third party was named in the endorsement, the provisions of this endorsement apply as required by the contract between Premier and Carothers. According to United, the contract that should be incorporated includes a provision which states that "[t]he Subcontractor's insurance **shall be primary as to any insurance under which the Contractor is a named or <u>additional insured</u>** or which otherwise extends coverage to the Contractor." From this contract provision, United concludes that the Colony policy requires that it be primary and non-contributing to the United policy because the United policy names Carothers as an additional insured.

---

[25] *Hardware Dealers*, 444 S.W.2d at 589.

Inserting the respective party names into the policy language demonstrates why United's argument fails:

> With respect to **Carothers**, the insurance provided by this policy shall be primary and non-contributing insurance. Any and all other valid and collectible insurance available to **Carothers** in respect of work performed by **Premier** under written contractual agreements with **Carothers** for a loss covered by this policy, shall in no instance be considered as primary, co insurance, or contributing insurance. Rather, any such other insurance shall be considered in excess over and above the insurance provided by this policy.

> Third Party to whom this endorsement applies is:

> _____[BLANK]_____

> Absence of a specifically named Third Party above means that the provisions of this endorsement apply "as required by written contractual agreement with **Carothers**."

The "you" referenced in the endorsement clearly refers to Colony's named insured, Premier, and does not have any application to Carothers. The "Third Party" to whom the endorsement applies is Carothers, the party with whom Premier contracted.[26] The term "third party" does not include Self-Concrete or United: The policy is primary only as to Carothers and only "in respect of work performed by Premier . . . for a loss covered by the policy." Here, Colony seeks recovery from United based on Self-Concrete's imputed liability to Carothers. Furthermore, the United policy is not other insurance "in respect of" work performed by Premier. Bonner alleged that Self-Concrete – not Premier – was responsible for his injuries, so the United policy is not coverage to which the endorsement makes Colony primary. The Colony policy and the United policy

---

[26] Recall, no contract exists between Premier and Self-Concrete or Premier and United.

are "mutually repugnant" cancelling out each other, so the insurers share the costs of defending Carothers in the Bonner lawsuit equally.

## C.    Waiver of the Right to Subrogation

Colony's policy contains a subrogation clause, entitling it to recover defense costs from any insurer that breached its duty to defend an insured party.[27] United contends that Colony waived its subrogation right against United and Carothers and that both prongs of the test for waiver of subrogation are met through the subcontract between Carothers and Premier and the policy that Colony issued to Premier. A valid waiver of subrogation generally requires that an insured must (1) obligate itself to a waiver pursuant to an underlying contract and (2) obtain a separate endorsement from its insurance carrier, waiving those rights.[28]

### 1.    The Subcontract

The subcontract between Carothers and Premier required Premier to obtain additional insurance to give adequate and complete protection to Carothers. Section 13 of the subcontract provides that "[t]he Sub-contractor's insurance shall contain a standard cross-liability endorsement **and a waiver of all rights of subrogation against the Contractor**, Contractor's surety, and **Contractor's insurers**." United claims that it qualifies as the "Contractor's insurer" so Colony waived its right of subrogation against United.

---

[27] *See Cont'l Cas. Co. v. N. Am. Capacity Ins. Co.*, 683 F.3d 79, 87 (5th Cir. 2012) (applying Texas law).

[28] *See, e.g. Ken Petroleum Corp. v. Questor Drilling Corp.*, 24 S.W.3d 344, 355 (Tex. 2000); *Chevron U.S.A, Inc. v. Cigna Ins. Co. of Tex.*, No. 09-97-032 CV, 1998 WL 472501, at *3-4 (Tex. App. – Beaumont Aug. 13, 1998, pet. denied).

No. 16-40676

2. The Endorsement

Even if we assume United qualifies as one of the "Contractor's insurers" under the subcontract between Carothers and Premier, no separate endorsement from Colony waived Colony's rights to subrogate United.

The Colony policy contains an endorsement that states:

**WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

PRODUCTS/COMPLETED OPERATIONS COVERAGE PART

SCHEDULE

Name of Person or Organization:

Any person or organization to whom or to which you are obligated by virtue of a written contract to waive your right of recovery.

SECTION IV – CONDITIONS.       8. Transfer of Rights of Recovery Against Others To Us is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard." This waiver applies only to the person or organization shown in the Schedule above.

United claims that it qualifies under the schedule as one of the "organizations to whom [Colony] is obligated by virtue of a written contract to waive [its] right to recovery." However, the "you" and "your" in the subject Colony policy endorsement and schedule unequivocally refer to Premier as Colony's named insured. When we insert proper names, the Colony endorsement reads:

13

Colony waive(s) any right of recovery Colony may have against Carothers because of payments Colony make(s) for injury or damage arising out of Premier's ongoing operations or 'Premier's work' done under a contract with Carothers and included in the 'products completed operations hazard.' This waiver applies only to Carothers.

And, when we insert proper names in the schedule it reads:

Any person or organization to whom or to which Premier [is] obligated by virtue of a written contract to waive Premier's right of recovery.

Carothers is the only party that could be listed in the schedule because Carothers is the only party with whom Premier contracted. That is why the quoted endorsement protects only Carothers's interests, and not Self-Concrete's as well. As discussed above, Bonner proffered multiple allegations against Self-Concrete on which liability is imputed to Carothers. Thus, Colony did not waive its rights against United.

**IV.**

**CONCLUSION**

For the foregoing reasons, we AFFIRM the district court's judgment.