**Lexington Ins. Co. v New York Mar. & Gen. Ins. Co.**

2025 NY Slip Op 30137(U)

January 10, 2025

Supreme Court, New York County

Docket Number: Index No. 651214/2022

Judge: Melissa A. Crane

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF
# NEW YORK NEW YORK COUNTY

PRESENT:     HON. MELISSA A. CRANE        PART            60M

_____

*Justice*

-------------------------------------------------------------------X

LEXINGTON INSURANCE COMPANY, ON ITS OWN
BEHALF AND AS SUBROGEE OF TWIN AMERICA, LLC
AND MARK 'ZEV' MARMURSTEIN,

                Plaintiff,

           - v -

NEW YORK MARINE AND GENERAL INSURANCE
COMPANY, GREENWICH INSURANCE COMPANY,
TWIN AMERICA, LLC, MARK 'ZEV' MARMURSTEIN,

                Defendants.

-------------------------------------------------------------------X

| INDEX NO. | 651214/2022 |
|---|---|
| MOTION DATE | 04/15/2024 |
| MOTION SEQ. NO. | 012 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 012) 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 256, 257, 258, 259, 279, 280, 281, 282, 283

were read on this motion to/for               JUDGMENT - SUMMARY          .

This case arises from a November 2015 tour bus accident in California. The accident allegedly injured various people, caused significant property damage, and resulted in various lawsuits against the tour operators and tour bus owners (the consolidated underlying litigation, *Kfouri v CS Global SF*, No. CGC-16-551098 [San Francisco Super. Ct.]). Ultimately, the underlying litigation settled for $10.5 million. Plaintiff Lexington Insurance Co. (Lexington), an insurer that provided umbrella coverage to defendants Twin America, LLC (Twin) and Mark 'Zev' Marmurstein (collectively, "Twin defendants"), brought this action to recover $2.5 million that it paid, subject to a reservation of rights, towards the settlement.

[* 1]

Plaintiff seeks to recoup that $2.5 million from the only remaining defendant in this action, Twin, under theories of common law indemnification, breach of contract, and declaratory relief.

## Background

The insurance coverage in the underlying litigation was arranged in two "towers," as illustrated by the graph below: (1) the insurance policies issued to the nonparty tour bus owners; and (2) the insurance policies issued to the vicariously liable defendants [the Twin defendants]



(amended complaint, NYSCEF Doc No. 43 at 7).

In the first tower, defendant New York Marine and General Insurance Co. (NYM) issued a $1 million primary policy to the bus owners, and nonparty Gotham Insurance issued a $4 million excess policy to the bus owners. In the second tower, defendant Greenwich Insurance Co. (Greenwich) issued two $1 million primary policies to Twin, a commercial auto policy (the auto policy) and a commercial general liability policy (the CGL policy). Also in the second tower, nonparty Axis Insurance issued a $4 million excess policy to Twin, and plaintiff issued a $5 million umbrella liability policy to Twin.

2

[* 2]

The bus owners' and Twin's respective excess insurers, Gotham and Axis, both contributed their total $4 million policy limits towards the settlement. Plaintiff paid the remaining $2.5 million under the umbrella policy it issued to Twin. Both the Greenwich auto and CGL policies are "fronting" policies with $1 million limits and matching $1 million deductibles. In this type of policy, the deductibles are the policy limits (see discussion in decision and order on motion 7 at pgs 11-13 [EDOC 137]).

Greenwich did not pay any amount towards the settlement under either of these primary policies. In addition, neither Twin nor its principal, Marmurstein, paid the Greenwich policies' deductibles or paid any amount for the settlement. However, Greenwich and Twin entered into a settlement agreement in April 2021 (Greenwich-Twin America settlement agreement, NYSCEF Doc No. 61). In that stipulation, they "agree[d] that any indemnity payments that New York Marine and/or Gotham pay on behalf of Twin and/or Marmurstein shall be applied to satisfy the [$1 million Greenwich auto policy] Indemnity Deductible" (id., ¶ 1). None of the other insurers, including Gotham and NYM, were involved with that Greenwich-Twin agreement.

On January 19, 2023, this Court denied NYM's motion to dismiss based on forum non conveniens (January 19, 2023 Order, NYSCEF No. 113). On July 7, 2023, this Court denied dismissal of any claim against Twin but granted Greenwich's motion to dismiss and Marmurstein's [individual] motion to dismiss (July 7, 2023 Orders, NYSCEF Doc Nos. 136, 137). On July 9, 2024, this Court granted NYM's motion for summary judgment, leaving Twin as the only remaining defendant (July 9, 2024 Order, NYSCEF Doc Nos. 296, 297).

Plaintiff now moves for summary judgment, pursuant to CPLR 3212, on the remaining causes of action against Twin: (1) common law indemnification to recover $1 million pursuant to the Greenwich Auto Policy (third cause of action) (NYSCEF Doc No. 43); (2) common law

3

[* 3]

indemnification to recover $1 million pursuant to the Greenwich CGL Policy (fourth cause of action) (*id.*); (3) declaratory relief stating "that neither of the Greenwich deductibles, and neither of the limits of the Greenwich policies, were satisfied or exhausted, in whole or in part, by any defense and/or indemnity payments made, or to be made, by New York Marine and/or Gotham in connection with the Consolidated Underlying Actions" (fifth cause of action) (*id.*); and (4) breach of contract pursuant to Condition J.3 of the Lexington umbrella policy's "scheduled underlying insurance" (sixth cause of action) (*id.*).

Twin also cross-moves for summary judgment pursuant to CPLR 3212 on all the above.

## TWIN'S RELEVANT INSURANCE POLICIES

### The Greenwich Auto Policy

The Greenwich Auto Policy provides, in Section II ["Liability Coverage"], that "We [Greenwich] will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto' " (Greenwich Auto Policy, NYSCEF Doc No. 59 § II [A] [Auto Policy]). That section further states that:

> "We [Greenwich] have the right and duty to defend any 'insured' against a 'suit' asking for such damages . . . . We may investigate and settle any claim or 'suit' as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements"

The Auto policy includes $1 million liability coverage and a $1 million deductible per accident (*see id.* at 74 [ENDORSEMENT #001]).

### The Greenwich CGL Policy

The CGL policy states, in Section 1 (a):

"We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result. But: (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance"

(Greenwich CGL Policy, NYSCEF Doc No. 60 [CGL policy]).

The CGL policy refers, in Section III [Limits of Insurance], to the Declarations page.

The Declarations page provides that the liability limits are $1 million per occurrence, and the

"Deductible Liability Insurance Endorsement" provides that the deductible is $1 million per

occurrence (*id.* at 77). That Endorsement states:

"A. Our obligation to pay damages or medical expense on your behalf applies only to the amount of damages in excess of any deductible amount stated in the Schedule above as applicable to such coverages.
. . . .
D. The applicable limits of insurance shall be reduced by the amount of any damages or medical expense included within the deductible amount"

(*id.* at 77-78).

The CGL policy also includes the following coverage exclusion for:

"'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . that is owned or operated by or rented or loaned to any insured"

(*id.*, § 2 [g]).

5

[* 5]

**The Greenwich "Large Deductible Program Agreement"**

Under the "Large Deductible Program Agreement" (Greenwich Large Deductible Program Agreement, NYSCEF Doc No. 58 [Notice of Election #3]), the Greenwich policies each had a $1 million retention and a $1 million deductible. The Program Agreement states that the "Claims Service Company [Greenwich] will handle and pay claims in accordance with the policy provisions and will bill the Insured for Paid Losses within the Insured's Retention described herein . . ." (*id.*, § B [1]).

**The Lexington Umbrella Policy**

Lexington issued a $5 million commercial umbrella policy to Twin (Lexington Policy, Doc No. 27 [Lexington policy]). The Lexington policy provides coverage for bodily injury and property damage that exceeds the "Retained Amount." The Retained Amount means "The total applicable limits of 'scheduled underlying insurance' (plus any 'Self-Insured' retention applicable thereto) and any applicable 'other insurance' providing coverage to [Twin America]" (*id.*, § V [W]-[X]; *see also id.*, § IV [F] ["This policy applies only in excess of the total applicable limits of 'scheduled underlying insurance' and any applicable 'other insurance' whether or not such limits are collectible."]). The Schedule of Underlying Insurance includes Twin America's $1 million Greenwich CGL policy, $1 million Greenwich Auto policy, and $4 million Axis excess policy (*id.* at 6).

Section J of the Lexington policy states:

"J. Maintenance of Scheduled Underlying Insurance
You agree that during the 'policy period'
. . . .
3. The total applicable limits of 'scheduled underlying insurance' will not decrease, except for any reduction or exhaustion of aggregate limits by payment of damages to which this policy applies.
. . . .

6

If you fail to comply with these requirements, we will be liable only to the same extent that we would have, had you fully complied with these requirements"

(*id.*).

## DISCUSSION

A party moving for summary judgment "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). If the movant meets this burden, the non-moving party must then establish the existence of material issues of fact (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]).

As discussed in further detail below, the Greenwich CGL policy's auto <u>exclusion</u> does not apply, both Greenwich primary policies are triggered, and Twin is obligated to pay both two $1 million deductibles. Twin breached the Lexington policy by failing to pay the Greenwich policy deductibles.

### A. The CGL Auto Exclusion

The CGL policy contains an auto exclusion for "'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured" (Doc No. 60, § 2 [g]).

Plaintiff argues that the court in the underlying litigation found, in connection with the good faith settlement, that Twin did not own or operate the vehicle, and accordingly, the auto exclusion does not apply.

"[W]henever an insurer wishes to exclude certain coverage from its policy obligations, it must do so in clear and unmistakable language" (*Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304, 310 [1984] [internal quotation marks omitted]). Thus, "ambiguities in an insurance policy['s] . . . exclusionary clause[s]" are "to be construed against the insurer" (*Ace Wire & Cable Co. v*

7

*Aetna Cas. & Sur. Co.*, 60 NY2d 390, 398 [1983]). However, "unambiguous provisions must be given their plain and ordinary meaning" (*Sanabria v Am. Home Assur. Co.*, 68 NY2d 866, 868 [1986]), and "courts are not free to disregard the plain meaning of the policy language to find an ambiguity where none exists" *Conlon v Allstate Vehicle & Prop. Ins. Co.*, 152 AD3d 488, 490 [2d Dept 2017] [internal quotation marks omitted]).

The First Department's decision in *DMP Contracting Corp. v Essex Ins. Co.* (76 AD3d 844, 846 [1st Dept 2010]) is instructive. The Court in *DMP* held that an exclusion foreclosing "'bodily injury' . . . arising out of, caused by or contributed to by the ownership, non-ownership, maintenance, use or entrustment to others of any 'auto'" was unambiguous in excluding coverage for bodily injury "whether or not it is the insured who owned, maintained, used or entrusted to others the subject automobile" because the plain meaning of the language of the provision "focuses on the connection between a vehicle and the injury, not between a vehicle and the insured" (*id.* [affirming the trial court's finding that "[a] fair reading of the policy and the plain language of the provision should have placed the insured on notice that the provision was applicable to the 'use' of 'any auto' regardless of ownership[,] [t]hus [ ] providing the insured with the opportunity to question or renegotiate coverage"]).

Here, unlike in *DMP*, the Greenwich CGL policy's auto exclusion is only triggered when "the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . <u>that is owned or operated by or rented or loaned to any insured</u>" (*id.*, § 2 [g]). That is, the Greenwich CGL policy's auto exclusion unambiguously excludes only claims for bodily injury or property damage involving vehicles Twin owned and operated or rented or loaned to another insured. There is nothing ambiguous about the Greenwich CGL policy or its auto exclusion (*cf. Essex Ins. Co. v Grande*

8

[* 8]

*Stone Quarry* LLC, 82 AD3d 1326, 1327 [3d Dept 2011] [finding a CGL policy ambiguous where changes to auto exclusion endorsement deleted the words "any insured" from the requirement that the injury-causing vehicle be owned, operated or loaned by "any insured," but the policy elsewhere continued to refer to the "insured or any other persons"]; *cf. also Covington Specialty Ins. Co. v Indian Lookout Country Club, Inc.* [62 F 4th 748, 750 [2d Cir 2023] [auto exclusion endorsement excluding claims for "[b]odily injury . . . arising out of the ownership, maintenance, use or entrustment to others of **any auto**" was not ambiguous] [emphasis added]).

Here, the interpretation of the relevant policy language hinges on whether the plain and unambiguous meaning of the automobile exclusion focuses on the connection between a vehicle and the injury, or between a vehicle and the insured. Endorsement provisions stating that coverage is excluded for "[b]odily injury . . . arising out of the ownership, maintenance, use or entrustment to others of **any auto**" are focused on the vehicle and the injury. In those provisions, it is the 'use' of 'any auto' that precludes coverage. Conversely, endorsement language that excludes "[b]odily injury . . . arising out of the ownership, maintenance, use or entrustment to others of any auto...owned or operates by or rented or loaned to **any insured**" requires the insured's ownership, operation, or entrustment to another to trigger the exclusion (*see e.g. Mount Vernon Fire Ins. Co. v Munoz Trucking Corp.*, 213 F Supp 3d 594, 603- 604 [SD NY 2016] ["the Auto Exclusion fully precludes defense coverage so long as the occurrence that caused the accident involved the ownership or operation of an auto by the insured."]).

As noted above, the Greenwich CGL policy's auto exclusion precludes coverage for "[b]odily injury ... arising out of the ownership, maintenance, use or entrustment to others of any auto ... owned or operated by or rented or loaned to **any insured**." This language unambiguously requires the insured to own, operate or entrust the vehicle involved in the

9

accident to trigger the exclusion. Because it is undisputed that Twin did not own or operate the tour bus in the underlying action, the endorsement has not been triggered.

Consequently, Twin is obligated to pay the Greenwich CGL deductible. The court rejects Twin's argument that, hypothetically, the auto exclusion may have applied under alternative theories of liability if the underlying matter had gone to trial. The caselaw is clear that the duty to indemnify is "determined by the actual basis for the insured's liability to a third person," not the allegations of pleadings (*Servidone Const. Corp. v Sec. Ins. Co. of Hartford*, 64 NY2d 419, 424 [1985]).

Accordingly, the CGL auto exclusion is unambiguous and does not apply.

## B. Twin Must Pay the Deductibles

Twin argues that its only obligation would be to reimburse Greenwich if Greenwich had paid amounts within the Greenwich policy limits. Thus, Twin argues that Lexington's claims should be against Greenwich and not Twin. Simultaneously, Twin argues that Greenwich would have no right to seek reimbursement from Twin even if Greenwich had paid any amounts due to the Greenwich-Twin settlement agreement. In addition, Twin continues to rely on *Intervest Constr. of JAX, Inc. v General Fidelity Ins. Co.* (133 So3d 494 [2014] [analyzing satisfaction of SIRs, not deductibles, under Florida law]) and *Vons Cos., Inc. v United States Fire Ins. Co.* (78 Cal App 4th 52 [Cal Ct App 2000], *as mod* [Mar. 6, 2000] [analyzing the same under California law]) for the premise that so long as the policy is silent on the issue, co-insurers can satisfy its deductibles.

Lexington counters with the case of *Zurich Am. Ins. Co. v Centex Corp.* (373 F Supp 3d 692, 699 [ND Tex 2016]). In that case, Zurich issued a $6 million CGL excess policy to defendant, subject to a $1 million deductible, providing coverage excess to two wrap up policies.

10

The first wrap up policy contained a self-insured retention (SIR) amount of $500,000 and a $5 million limit of liability for each occurrence, while the second was a typical policy with a $5 million limit of liability. The underlying case ultimately settled for $11.5 million, with Zurich contributing $2.5 million. Zurich, alleging breach of contract, sought to recover the $1 million deductible from its insured, Centex. Centex argued, like Twin, that other entities could satisfy a deductible on the insured's behalf. Also, like Twin, Centex cited to cases that concerned SIR requirements, as opposed to deductibles.

The *Zurich* Court aptly explained:

"With an SIR, the insured must meet the SIR amount before the insurer becomes responsible for any payment under the policy. For example, the disputed policy in *Continental Casualty*[1] provided that the SIR "'must be paid prior to any payment being made by [the insurer] under the terms and conditions of this Policy of insurance[2].'" Accordingly, the insurer's liability attached only after the insured covered its portion of the loss.

...

In other words, the policy requires Centex to pay back deductible amounts that Zurich puts forth, obliging Centex to meet the reimbursable requirement after Zurich covers the deductible amount, not before. As a result, the Zurich Policy deductible does not "represent[ ] the amount of the loss that the insured is responsible for before the coverage is triggered[3]," but rather the amount that the insured is responsible for *after* coverage is triggered"

(*id.* at 699 [internal citations omitted]).

The *Zurich* policy, like the Greenwich policies here, required the insured to pay the deductible to the insurer. The Greenwich policies specifically require Twin to reimburse Greenwich "for deductible amounts that [Greenwich] pay[s] on [Twin's] behalf" (NYSCEF Doc No. 59 at 75 [ENDORSEMENT #001]). Therefore, according to Lexington, it should follow that

---

[1] *Continental Casualty Co. v North American Capacity Ins. Co.*, 683 F3d 79, 90 (5th Cir 2012)

[2] (*id.*) (quoting disputed policy)

[3] *id.*

11

"[s]ince Greenwich had not made a payment within the Greenwich [] Deductible for Twin to reimburse, a payment by another insurer cannot, as a matter of law, satisfy the Greenwich [] Deductible . . . ." (plaintiff's omnibus memorandum of law in support of its motions for summary judgment, NYSCEF Doc No. 225 at 27-28).

Here, Twin cannot evade its deductible obligation by executing a settlement agreement with Greenwich without taking into consideration its obligation to Lexington as well. Lexington is entitled to look to its insured, Twin, for reimbursement on amounts paid for what essentially amounts to the Greenwich deductibles (*Paljevic v WFC Tower D Co.*, No. 64161997, 2002 WL 34705855 [Sup Ct, NY County 2002] ["Where the claim amount is within the deductible, the insured must refund the amount to the insurer"]; *see Tokio Marine & Fire Ins. Co. v Insurance Co. of N. Am.*, 262 AD2d 103, 103 [1st Dept 1999]). This is particularly so because these deductible amounts were Twin's obligation to pay in the first instance.

The Lexington Policy states that the amount of the "scheduled underlying insurance" cannot be decreased other than "by payment of damages." Here again, "unambiguous provisions must be given their plain and ordinary meaning" (*Sanabria*, 68 NY2d at 868), and "courts are not free to disregard the plain meaning of the policy language to find an ambiguity where none exists" (*Conlon*, 152 AD3d at 490 [internal quotation marks omitted]). Plaintiff has established, prima facie, that the Greenwich-Twin settlement agreement is not "payment of damages" under the policies. Twin cannot redefine NYM's coverage or Gotham's excess policy payment as "payment of damages" when the record demonstrates that Greenwich and Twin unilaterally decided to "apply" $1 million from the tour bus owners' policy payments to satisfy Twin's deductible obligations. Twin breached Condition J.3 by failing to pay its deductibles under the

12

Greenwich policies and improperly reducing the "scheduled underlying insurance" amount from $6 million to $4 million. In opposition, Twin raises no material issues of fact.

### CONCLUSION

For the reasons stated above, plaintiff is awarded summary judgment on its sixth cause of action for breach of contract against Twin. In addition, plaintiff is entitled to prejudgment interest from 1/3/22, the date the California court approved the settlement (*see* Doc 95). As the court grants plaintiff summary judgment on the sixth cause of action for breach of the Lexington policy [condition J.3], the court denies the plaintiff's motion for summary judgment as it relates to plaintiff's common law indemnification claims. The common law indemnification claims duplicate the breach of contract claim.

However, plaintiff is entitled to the declaratory relief against Twin that it requests in its fifth cause of action. For the sake of clarity, plaintiff is not entitled to attorneys' fees. Although plaintiff requested attorneys' fees in its amended complaint, there is no support for its reasonable attorneys' fees in its motion papers. Twin's cross-motion for summary judgment is denied in its entirety.

The court has considered the parties' remaining contentions and finds them unavailing. Accordingly, it is

**ORDERED** that plaintiff Lexington Insurance Co.'s motion seeking summary judgment (motion sequence 12) pursuant to CPLR 3212 is granted as set forth in this decision and order; and it is further

**ORDERED** that the Clerk is directed to enter judgment in favor of plaintiff and against defendant Twin America LLC in the sum of $2,000,000.00, with interest at the statutory rate

13

[* 13]

from 1/3/22, as calculated by the Clerk, together with costs and disbursements as taxed by the Clerk upon the submission of a proper bill of costs; and it is further

**ADJUDGED AND DECLARED** that "that neither of the Greenwich deductibles, and neither of the limits of the Greenwich policies, were satisfied or exhausted, in whole or in part, by any defense and/or indemnity payments made, or to be made, by New York Marine and/or Gotham in connection with the Consolidated Underlying Actions" captioned *Kfouri v CS Global SF*, No. CGC-16-551098 [San Francisco Super. Ct.]; and it is further

**ORDERED** that plaintiff's motion is otherwise denied; and it is further

**ORDERED** that defendant Twin America, LLC's cross motion for summary judgment pursuant to CPLR 3212 is denied in its entirety; and it is further

**ORDERED** that the Clerk is directed to mark this case disposed.

_____1/10/2025_____
DATE

_____
MELISSA A. CRANE, J.S.C.

CHECK ONE: [X] CASE DISPOSED    [ ] NON-FINAL DISPOSITION

[ ] GRANTED   [ ] DENIED   [X] GRANTED IN PART   [ ] OTHER

APPLICATION: [ ] SETTLE ORDER   [ ] SUBMIT ORDER

CHECK IF APPROPRIATE: [ ] INCLUDES TRANSFER/REASSIGN   [ ] FIDUCIARY APPOINTMENT   [ ] REFERENCE

14